WESTERN TRANSIT CO. v. BROWN.

(Circuit Court of Appeals, Second Circuit. March 10, 1908.)

INSURANCE—MARINE INSURANCE—RUNNING-DOWN CLAUSE.

A running-down clause of a policy of marine insurance, providing that the insured will reimburse the owner for damages paid "if the ship hereby insured shall come into collision with any other ship or vessel," is intended to protect the insured only in case his ship actually herself comes into contact with the injured ship, and there is no liability thereunder where the insured ship by her suction caused another to sheer and come into collision with a third, although she was held liable in damages therefor in a suit for the collision.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 152 Fed. 476.

Goulder, Holding & Masten, for appellant.

Wing, Putman & Burlingham (Harrington Putman, of counsel), for appellee.

Wallace, Butler & Brown (F. M. Brown, of counsel), for Manheim Insurance Company.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The libel is filed upon a policy of marine insurance. The tug Mariposa, with the schooner Martha in tow, coming down the starboard side of a dredged cut about 800 feet wide, was met by the steamers Wilbur and Troy going up. The Wilbur suddenly sheered to port, struck and sank the Martha. In a suit by the owners of the Martha against the steamers Wilbur and Troy to recover damages for the collision both steamers were held at fault. The court found that they were coming up the wrong side of the center of the cut, were racing, and that the Troy kept so close to the Wilbur that she sucked the Wilbur's stern into her own wake, and so caused the Wilbur to sheer to port, carrying her into the Martha.

The policy of insurance contains a running-down clause, the material portion of which is as follows:

"And it is further agreed that if the ship hereby insured shall come into collision with any other ship or vessel or raft, and the assured shall in consequence thereof become liable to pay, and shall pay, by way of damages to any other person or persons, any sum or sums not exceeding in respect of any one such collision the value of the ship hereby assured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscription hereto bear to the value of the ship hereby assured."

Colloquially we speak of a ship as being insured against damage by collision, but what we mean is that her owner is insured against loss arising from damage to his ship caused by collision. This peril was covered by the ordinary marine policy. When it was desired to protect the owner against loss because of his liability for damage caused by his own ship to another ship, the running-down clause was inserted in the ordinary policy. The extent of the underwriters' liability under that clause depends upon its construction; i. e., upon what the parties intended to cover by it. In respect to his legal liability as a

wrongdoer, no doubt one is as responsible for striking another with a club in his hand or with a bullet from his gun as for striking him with his fist. So, also, in respect to legal liability under the rules of navigation or in proceedings to limit liability, or under the doctrine of principal and agent, two vessels may be regarded as one. But these principles of law do not depend upon contract, and do not necessarily apply to a contract of indemnity. Whether they apply, and, if so, how far they apply to the running-down clause in a marine policy, depends upon the intention of the parties to the contract. They might have intended to protect the owner against loss because of liability to third parties caused in any way by his ship; or they might have intended to protect the owner in all cases where there was a contact between his ship and the other ship, either direct or by means of a physical connection; or they might have intended to protect the owner only when his ship actually herself came into contact with the injured ship. Presumably the premiums charged would diminish as the risks were diminished.

We entirely approve of the language of Lord Bramwell in his dissenting opinion in the case of The Niobe, reported as McCowan v. Baine (App. Cas. 1891, 401), which was a suit on this very clause:

"I say, then, in very fact, the Niobe did not come into collision with the Valetta, causing a liability in the appellant, and, according to the ordinary primary meaning of the words used, the case is not within them. This is agreed. But it is said that for some reason the primary and natural meaning of the words is to be extended; and that we should hold that there was a collision where there was none. I am at a loss to see why. I think an act of Parliament, an agreement, or other authoritative document ought never to be dealt with in this way, unless for a cause amounting to a necessity or approaching to it. It is to be remembered that the authors of the document could always have put in the necessary words if they had thought fit. If they did not, it was either they thought of the matter and would not, or because they did not think of the matter. In neither case ought the court to do it. In the first case, it would be to make a provision opposed to the intention of the framers of the document; in the other case, to make a provision not in the contemplation of those framers."

If it be supposed that the parties to this policy intended the running-down clause, as in the case first put, to cover any loss the assured sustained because of damage caused by his vessel to another vessel, then, of course, the libelant should recover the amount it has paid. If they intended, as in the second case supposed, to cover any loss caused by damage done either directly or by means of intermediate physical connection, the libelant ought likewise to recover. The Troy caused the Wilbur to sheer into the schooner by sucking the water between her stern and the stern of the Wilbur into her own wake, and we think her owners are as much responsible for this as if she had pulled the Wilbur's stern over by a hawser, or, by contact with an intervening vessel, had pushed her bodily over. The connection by water between the Troy and the Wilbur, though not so obvious, is equally a physical connection.

We think the language of the clause means that the vessel of the assured shall herself come into contact with the injured vessel, and, as the Troy did not come into contact with the Martha, the decree of the court below is affirmed, with costs.