## THE TOLUMA. *
### THE SUCARSECO.
#### No. 431.

Circuit Court of Appeals, Second Circuit.
Aug. 7, 1934.

*Writ of certiorari granted 55 S. Ct. 218, 79 L. Ed. ___

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (W. H. McGrann, of New York City, of counsel), for libelant-appellee Aktieselskabet and The Toluma.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar and Leonard J. Matteson, both of New York City, of counsel), for libelants-appellants West India Oil Co. and J. H. Senior, Agent, American Insurance Co., and others.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

During the night of November 22, 1926, the Norwegian steamship Toluma, bound from New York with a general cargo for South American ports, was in collision at sea off the Chesapeake Capes with the American steamship Sucarseco, also bound from New York with a general cargo but for Pacific Coast ports via the Panama Canal. Both ships were damaged. The Sucarseco proceeded on her voyage, but the Toluma was so injured that her master, prudently to save further loss to ship and cargo, put into Norfolk, Va., for repairs. There the cargo of the Toluma had to be in part discharged to permit the necessary repairs to the ship to be made. After such repairs were made, the discharged portion of the cargo was reloaded and the Toluma then completed her voyage and delivered her cargo.

Three suits in admiralty were brought in the Southern district of New York as a result of the collision and its attendant consequences. A libel was filed by Aktieselskabet Cuzco, owner of the Toluma, against the Sucarseco to recover the damages sustained by that ship. A cross-libel was filed by Submarine Boat Corporation, as owner, and Transmarine Corporation, as charterer in possession of the Sucarseco, against the Toluma, Aktieselskabet Cuzco, her owner, and Grace Line, Inc., her charterer, to recover for the damage to the Sucarseco. And a libel was filed by West India Oil Company et al., as the owners, shippers, and underwriters of cargo on the Toluma, against the receivers of the owner and of the charterer of the Sucarseco to recover their damages, including contributions by cargo in general average.

These suits were all ordered consolidated and were heard together in the District Court on a "Stipulation of Agreed Facts." From the decree entered, the cargo interests alone have appealed, and the sole question presented is whether there was error in not allowing cargo on the Toluma to recover from the Sucarseco contributions made by cargo in general average.

It is agreed by all parties that both ships were seaworthy and that the collision was caused by faulty navigation for which both were equally at fault. No question involving the correctness of the general average adjustment is before us.

The bills of lading, under which all the Toluma's cargo now interested was carried, contained the so-called Jason clause, and the cargo has made the contributions, required under that clause, in accordance with the general average statement.

Cargo was permitted to recover below only for physical damage sustained. This limited recovery to the damage caused by extra handling, as there was no actual harm done the cargo at the time of collision. Recovery of the general average contributions was denied on the ground that the rights of

an owner of cargo against a ship at fault for a collision with the carrying vessel are derivative only, and on the additional ground that an obligation to contribute in general average under the Jason clause rests wholly on a special contract to which the noncarrying vessel is not a party, and that such damage is too remote to be recoverable.

■ The precise issue before us on this appeal seems not to have been squarely raised before, though we are given to understand that it has often been mooted and avoided by compromise. However, the principles which must govern the decision are well established. This court decided, before the Harter Act (46 USCA §§ 190–195) was passed, that a cargo owner might recover from the carrying ship which was solely at fault for a collision contributions made in general average, and this on the ground that they were a part of the cargo damage. The Energia (C. C. A.) 66 F. 604. The effect of that decision, which is of present importance, is that, in a suit by cargo for collision damages, no distinction purely as an element of damage is to be made broadly between physical cargo damage and damages sustained by cargo by reason of general average contributions. The two stand, generally speaking, on the same footing. This was recognized in Ralli et al. v. Societa Anonima di Navigazione, etc. (D. C.) 222 F. 994; Erie & Western Transp. Co. v. City of Chicago (C. C. A.) 178 F. 42, and Gray's Harbor Tugboat Co. v. Petersen (C. C. A.) 250 F. 956. The same rule obtains in England. The Minnetonka (1905) Prob. Div. 206.

■ Furthermore, cargo is not at fault for a collision in which the carrying ship is involved with another, and may recover its provable damages from the noncarrying vessel when the fault of that ship is a contributing cause. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126; The Atlas, 93 U. S. 302, 23 L. Ed. 863.

■ When both ships in collision are at fault and cargo has recovered from the noncarrying vessel, the owners of that ship may recover from the carrying vessel one-half of the cargo damages on a division of the total damage for the purpose of determining ultimate recovery as between the two ships. And when the balance between the ships has been struck, there is a single recovery from the other ship by the ship which has proved the greater loss. The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91. Nor is this method of computing the damages and obtaining the balance for a single recovery done away with by the provisions of the Harter Act. The

Chattahooche, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801.

Were it possible to apply these principles without taking other factors into account, the right of recovery of the general average contributions here made would be plain. Because of the comparatively small amount of damage sustained by the Sucarseco, that ship and those interested in her have no financial interest in the outcome of this appeal anyway, and, as it happens, the Toluma is making the real defense of the Sucarseco in the action by Toluma's cargo, for Toluma will be adversely affected by a recovery by her cargo from Sucarseco which will increase the Sucarseco's claim in the division of collision damages between the two ships.

It is claimed that these general average contributions cannot be recovered in full from Sucarseco because the right to recover in any event is derivative and at best limited to the proper proportion of the Toluma's recovery from Sucarseco. This contention is based on theories of the nature of general average and the import of certain decisions which we believe untenable.

■ Since it is agreed that all of the contributions were of a general average nature in settlement of expenses properly includable in the average adjustment, we need not now pay further attention to that phase of the matter. In making the expenditures, the master of the Toluma acted as the agent of all concerned in the venture. Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742. As the representative of the shipowner, the master was under no duty to sacrifice any of the shipowner's property to save cargo. The Jason, 225 U. S. 32, 32 S. Ct. 560, 56 L. Ed. 969. Sacrifices made after the safety of the venture has been imperiled and made to save as much as possible from the threatened danger of loss and to save that for the benefit of all is the basis of a general average of the sacrifice among all concerned. That makes the expenses which the master incurs as the agent of the cargo a primary charge on all the cargo interests whose property is rescued from the danger, and it is payable when the property rescued is taken to its destination. The master alone can bind the cargo to the payment of such expenses, and when he does that he acts as the agent of cargo. So such expenses, when occasioned by the fault of a stranger, are incurred by cargo not as present commitments in fulfillment of a liability secondary to the stranger's to share the loss sustained by the ship, but as sacrifices made to make it possible to complete the voyage and avert greater loss. Consequently, there can

be no distinction in respect to general average contributions by cargo being recoverable as damages by cargo in its own right between a situation where a collision between ships is due to the sole fault of the carrying ship and one where both ships are at fault and the decision in The Energia, supra, which puts such damage on the same plane with physical damage is applicable in principle to this case. While before the Harter Act errors in navigation on the part of the carrying ship gave rise to an action by cargo against that ship to recover its damage including general average contributions, the statute, since the Toluma fulfilled the prescribed conditions for the excuse, excused that ship from liability to cargo though it left the liability of the noncarrier untouched. The idea that the liability of the noncarrying ship, when at fault for a collision, to cargo on the carrying ship, is secondary, may be due in part at least to some reference to the position of cargo as that of a surety or insurer in Pool Shipping Company v. United States (C. C. A.) 33 F.(2d) 275, where the right of the carrying ship to recover as bailee of the cargo was sustained, but that language is not to be torn from its context and given general application. Nor is there anything contrary to our conclusion here in Ralli v. Societa Anonima, etc., supra, where the carrying vessel jointly at fault for the collision had been credited with one-half of the general average contributions in the division of damages between the ships and was required to account to its cargo for this credit.

But even so it is said that the Sucarseco is not lawfully to be required to pay losses sustained by cargo on the Toluma through contributions in general average because the expenses incurred by the master were made binding upon cargo, and so the proper subject of general average contribution, not by virtue of any requirement of law, but because of a private contract between cargo and carrier to which the Sucarseco was not a party, viz. the Jason clause in the bills of lading. This clause was upheld in The Jason, supra, and has come to be widely used and widely known under that name. It affords a means by agreement for parties in the venture to give to the master authority to act as agent for cargo for the purpose of incurring general average expenses which he would not have under the Harter Act as shown by The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 43 L. Ed. 130. This Jason clause is not in any real sense a diminution of the rights cargo would otherwise have. On the contrary, it enables cargo to have the master as its agent at the time and place of the peril to act for it to make such sacrifices as may be timely and effective to avoid greater loss. And to secure that right, cargo agrees to contribute in general average though the Harter Act would otherwise excuse it from so doing. The Irrawaddy, supra.

It is said that losses sustained under such an agreement are too remote to be recovered from the noncarrying ship under the principles in this respect recognized in Robins Dry Dock & Repair Co. v. Flint, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290; Mobile Life Insurance Company v. Brame, 95 U. S. 754, 24 L. Ed. 580; The Federal No. 2 (C. C. A.) 21 F.(2d) 313, and causes of like import. It may be accepted generally that a tort to one person does not extend in legal consequence to a third person who has been harmed merely because he had contracted with the one directly injured in person or property by the tort. But the tort of the Sucarseco was not merely of that nature as it affected the Toluma's cargo. It was a direct contributing cause of the loss which was sustained by cargo. It made the expenses necessary. Since the Jason clause is valid, it was lawful for the owners of cargo to ship it at their own risk so far as that clause made the risk theirs. And their liability to contribute in general average under this clause is in no true sense the less a general liability imposed by maritime law than it was when a general average situation was created as a matter of law merely by circumstances occurring on a voyage. Always an essential element has been a common venture of ship and cargo on a voyage. Always the relationship of ship to cargo and of cargo to ship has been based upon some contract of carriage express or implied. Whenever such a contract is lawful and is such that cargo is bound to contribute in general average if a general average situation is created, it is the creation of the emergency which makes sacrifices necessary that causes the loss to cargo as much when the Jason clause in a bill of lading underlies general average liability as when a contract of carriage played its part in establishing the required relationship in a common venture at sea to support general average contributions without any Jason clause. The position which would be established for the Sucarseco is no more than to say that, since a cargo owner and the carrying ship need not make a Jason clause agreement, if they choose to do so, a tort-feasor may create a situation which does necessarily cause the cargo owner to make contributions in general average and then escape all lia-

bility on that score by saying to the cargo owner in effect: "My tort would not have injured you if you had shipped your goods without obtaining any benefits or assuming any obligations under the Jason clause." We cannot subscribe to the theory that the terms of the contract of carriage are of any concern to the tort-feasor, provided the legal relationship of cargo and carrier coupled with the occurrence of events for which the tort-feasor is legally responsible creates a general average situation that requires cargo to contribute. It may then recover such contributions from the tort-feasor as in The Energia, supra.

The further contention that, if Toluma's cargo recovers from Sucarseco, the resulting increase in the damages which that ship may offset against the claims of the Toluma in the division between them will in effect nullify Toluma's benefit from cargo's contributions to the general average expenses, cannot be considered sound. Of such a nature was the argument rejected in The Chattahooche, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801.

Decree modified.