NEW YORK & CUBA MAIL S. S. CO. v. AMERICAN S. S. OWNERS' MUT. PRO-TECTION & INDEMNITY ASS'N, Inc.*

No. 432.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1934.

*Writ of certiorari denied 55 S. Ct. 213, 79 L. Ed. ——.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and Leonard J. Matteson, both of New York City, of counsel), for libelant-appellant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Cletus Keating and Roger Siddall, both of New York City, of counsel), for respondent-appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Faults in navigation by both ships brought the libelant's steamship Mexico into collision in the harbor at New York with the steamship Hamilton. The master of the Mexico justifiably there incurred expenses of a general average nature. These expenses were stated by average adjustors and cargo contributed accordingly.

Suits against each vessel, in one of which this libelant sued both as owner of the Mexico and bailee of her cargo, were settled on an .equal fault basis. In the computation between the ships, the contributions in general average made by the Mexico's cargo were treated as a liability of the Hamilton and ac-

cordingly as part of its collision damages, and, when the balance was struck, the Hamilton, having sustained less damage than the Mexico, paid the difference to the libelant. The libelant paid to the cargo of the Mexico the amount which was recovered from the Hamilton on account of the general average contributions by the Mexico's cargo.

The Mexico carried hull insurance under policies having collision or running down clauses with provision for settlement of losses on the basis of cross-liabilities and tried to collect thereunder one-half of the amount which had been treated as the Hamilton's collision damages in its settlement with the Hamilton. The hull underwriters paid the libelant one-half of the amount of the direct damage sustained by the Hamilton and accounted for by the Mexico, but refused to pay the libelant what it actually lost by the reduction in its recovery from the Hamilton to the extent that the Hamilton added to its other damages the amount of its liability to reimburse the Mexico's cargo for general average contributions. This refusal was based on a provision in the collision clauses in the policies that such clauses "in no case shall extend to any sum the assured may become liable to pay * * * in respect to cargo * * * of the insured vessel."

The Mexico also was insured by the respondent appellee under so-called club insurance in accordance with the respondent's by-laws. The insurance was to the effect, subject to certain limitations not now in issue, that the respondent would indemnify the Mexico for its liability for loss or damage arising from collision with another vessel or craft to the extent that such liability was not covered by hull insurance described, inter alia, as being subject to settlement on the principle of cross-liabilities. Respondent's by-laws, art. VIII, § 6, clause .2. Such described hull insurance was the kind carried by the Mexico. The respondent's insurance liability also extended, with limitations not now in issue, to indemnify for loss or damage to or in connection with cargo carried on board the Mexico. Respondent's by-laws, art. VIII, § 6, clause 5.

The District Judge, following his decision in The Toluma-Sucarseco Case (D. C.) 4 F. Supp. 344, in which our decision on appeal is handed down herewith, Aktieselskabet v. Sucarseco, 72 F.(2d) 690, held that the respondent was liable for one-half of the physical damage to the Mexico's cargo, but denied recovery for that part of the libelant's claim which was based on contributions by the Mex-

ico's cargo in general average which had been settled for by the Hamilton and treated as damage sustained by the Hamilton in the adjustment between the two ships. This liability was considered to be imposed upon the respondent under clause 2 above mentioned, though not under clause 5 of the same article and section. The distinction was drawn on the ground that the respondent was bound to adjust a claim for liability for collision loss or damage under clause 2 on the principle of cross-liabilities but under clause 5 only on the basis of single liability, and, since the balance struck between the two ships was in favor of the Mexico, the Mexico had suffered no loss for which the respondent was liable unless the basis of settlement was that of cross-liability.

It is convenient to determine first the correctness of the decision below as to the basis on which the respondent was bound by its liability insurance to indemnify under either clause 2 or clause 5. There was no express provision in either clause that settlement should be made, where both vessels were at fault for the collision, on the basis of cross-liabilities. As to clause 5, the subject of cross-liabilities is not mentioned either in the clause itself or in any of its subdivisions. Since there is nothing whatever to indicate that the respondent agreed to indemnify for losses adjusted under clause 5 on any other basis than that of single liability which follows as a matter of course under well-settled principles of maritime law which will be presently discussed, the trial judge was clearly right in holding that the Mexico, which paid the Hamilton nothing, had no liability for which it was to be indemnified by the respondent under clause 5.

Under clause 2, however, which made the respondent liable, except to the extent of a now immaterial deduction, to indemnify the libelant for liability for collision loss or damage which was not covered by hull policies under which settlement was to be made on the basis of cross-liabilities, the District Judge was of the opinion, and held, that the respondent was bound to settle on the same basis; i. e., cross-liability. To this construction we cannot agree. Nor does our decision depend at all on any technical construction of the clause. In plain and simple language the respondent agreed to indemnify the libelant for liability for collision loss or damage for which hull underwriters were not liable when the liability of such hull underwriters was determined on the principle of cross-liabilities. The engagement of the respondent was not to settle for any additional loss or dam-

age liability on the same basis hull underwriters were bound to adjust losses, but to indemnify for any additional liability for loss or damage; and, since the parties did not in any way define such liability, it follows that it was only what was additional liability of the Mexico as a matter of law.

Clause 2 reads as follows:

"(2) Liability for loss or damage arising from collision with another vessel or craft to the extent only that such liability is not or would not be covered by hull policies under a clause in words or substance as follows:

"'And it is further agreed, that if the Ship hereby insured shall come into collision with any other Ship or Vessel, and the Assured shall in consequence thereof become liable to pay, and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such collision the value of the Ship hereby Insured, we, the Assurers, will pay the Assured such proportion of three-fourths of such sum or sums so paid as our subscriptions hereto bear to the value of the Ship hereby insured. And in cases where the liability of the Ship has been contested with the consent in writing of a majority of the Underwriters on the hull and/or machinery (in amount) we will also pay a like proportion of three-fourths of the costs thereby incurred or paid; but when both Vessels are to blame, then, unless the liability of the Owners of one or both of such Vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of Cross-Liabilities as if the Owners of each Vessel had been compelled to pay to the Owners of the other of such Vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision; and it is further agreed that the principles involved in this clause shall apply to the case where both Vessels are the property, in part or in whole, of the same owners, all questions of responsibility and amount of liability as between the two ships being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Managing Owners of both Vessels, and one to be appointed by the majority (in amount) of Underwriters interested in each Vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above to be final and binding. Provid-

ed always that this clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbours, wharves, piers, stages, and similar structures, consequent on such collision, or in respect of the cargo or engagements of the Insured Vessel, or for loss of life, or personal injury.'

"(a) Each claim hereunder shall be subject to a deduction of $50."

It was stipulated that the running down clause incorporated in clause 2 was modified by substituting four-fourths for three-fourths as the proportion to be paid by hull underwriters in the event of liability, and it is suggested that this modification eliminated clause 2 altogether, but that obviously needs no comment.

Were the claim here asserted something covered by the running down clause, it might well be that the respondent became bound to adjust any such additional liability on the same principle of liability as between the ships that hull underwriters were bound to recognize. This might well apply to the additional one-fourth had the clause been unmodified and the liability of hull underwriters under the running down clause left at the original three-quarter proportion. That question is not before us, however, since the running down clause as modified permitted full recovery under the hull policies.

The point here is whether claims wholly outside the running down clause must by implication be settled on the same basis that governs the settlement of claims within it. The proviso at the end of the clause excludes "any sum which the Assured may become liable to pay, or shall pay * * * in respect of the cargo of the Insured Vessel. * * * " If the claim made here is not one "in respect of the cargo" of the Mexico, it was within the coverage of the hull policies, and consequently excluded from the club insurance under which the claim is here made. The only alternative is that the claim is "in respect of the cargo." In such event no part of the running down clause in the hull insurance can apply to it, for there was a total exclusion of this kind of liability. The last situation being the only one in which the respondent can be liable in any event on the claim here made, its liability must be determined without using the running down clause dealing with liability under hull policies except to show what liability was covered under those policies for the purpose of excluding that to get at the true coverage of the respondent's club insurance.

Section 3 of the Harter Act (46 USCA § 192) aside, cargo which sustains physical damage in a collision between two vessels may, when both are at fault, since it is itself blameless, recover under our law in full from either. The Atlas, 93 U. S. 302, 23 L. Ed. 863. Cargo cannot, however, because of the above-mentioned section of the Harter Act, recover from the carrying ship when that ship, though at fault, is entitled to the benefit of the act. It may nevertheless recover of the noncarrying vessel, also at fault, its full damages. The Chattahooche, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801. We have held in Aktieselskabet v. Sucarseco, 72 F.(2d) 690, handed down with this opinion, that the same rules apply to damage to cargo due to contributions in general average. Furthermore, in the division of the damages between the ships when both are at fault, the noncarrying ship, which must pay for the damage to the cargo of the carrying ship, may treat that as a part of its own collision damage in the computation to determine which ship must pay the other. Erie R. Co. v. Erie & W. Transp. Co., 204 U. S. 220, 27 S. Ct. 246, 51 L. Ed. 450; The Chattahooche, supra. Now the owners of the Mexico have sustained a loss in respect of its cargo because the Hamilton was entitled to add its liability to the Mexico's cargo to its other damages in the division, and thereby the amount they would otherwise have received from the Hamilton has been pro tanto diminished. This diminution was not due, however, to any liability of the Mexico to its own cargo or to the Hamilton, but simply because the Hamilton might offset its own damage in the division and such damage included its liability to the Mexico's cargo. What resulted was a single liability of the Hamilton for the balance struck on the division of damages between the ship and consequently no liability on the part of the Mexico.

Therefore the collision and its resulting damage did not as a matter of law impose any liability upon the Mexico for collision loss or damage, and so the respondent is not liable for it did not insure against any loss sustained by the libelant. The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91; The Khedive, 7 A. C. 795; London Steamship Owners Ins. Co. v. Grampian Steamship Co., 24 Q. B. D. 663.

As this fully disposes of the appeal, other points argued and briefed need not be discussed.

Decree reversed, and libel dismissed.