### THE SCHODACK.

### UNITED STATES v. AMERICAN INS. CO. OF NEWARK, N. J., et al.

### No. 297.

Circuit Court of Appeals, Second Circuit.

April 5, 1937.

Tompkins, Boal & Tompkins, of New York City (Arthur M. Boal, of New York City, of counsel), for appellants.

Lamar Hardy, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The United States Shipping Board had two self-insurance funds, one covering hull risks and the other covering protection and indemnity risks; on July 1, 1929, it discontinued the latter and entered into a contract with the appellants to cover those risks under the provisions which had governed its own insurance fund so that the coverage by the appellants was the same.

Its ship Schodack was covered by this contract. On June 2, 1931, while proceeding to dry dock with the assistance of three steam tugs, and while between piers 2 and 3 on the Hoboken side of the river, the wind and tide caused her to collide with the tug Timmins, which was fastened to her port bow with a line, and forced the latter into contact with the tug Hanscom, which was moored alongside pier 2, causing damage to the Hanscom. In a suit by the owner of the Hanscom, the appellee was found solely at fault and liable. The collision of the Schodack with the Timmins, therefore, caused the second collision and the resulting damage. The appellee either paid the amount of this decree or caused it to be paid on July 22, 1933, and now sues on this contract of insurance for reimbursement.

The contract of insurance expressly excludes losses covered by the ordinary form of hull policy. The parties stipulated that the form of hull policy, under which all insurance in the American market at the time was written, provided among other things: "If the vessel hereby insured shall come into collision with any other Ship or Vessel, and the Assured or Charterers shall in consequence thereof become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, we, the underwriters, will pay the Assured or Charterers such proportion of such sum or sums so paid * * * Provided always that this clause shall in no case extend to any sum which the Assured or Charterers may become liable to pay, or shall pay, for in-

juries to harbors, wharves, piers, stages and similar structures consequent on such collision * * *."

The sole issue is whether the hull policy which insures against the risk of collision extends to all damages proximately resulting from such collision, except as otherwise specifically provided. Under the English law it does and the English form of hull policy is similar to ours in all relevant respects. France, Fenwick & Co. v. Merchants' Marine Ins. Co., Ltd. (1915) 3 K.B. 290, accepted an interpretation which includes a double collision, as where the collision between the ships, first and second, is shown to have caused the collision between the second and third, saying that the first is liable to the third under the terms of the hull policy. A prior case, The Niobe, [1891] A.C. 401, had already decided that in a collision between a tug and a third vessel, the tow was liable within the meaning of the hull policy upon the theory that the tug and tow together constitute one vessel. But without subscribing to the latter doctrine, which has met with recognition in other situations [In re O'Donnell, 26 F.(2d) 334 (C.C.A.2)], we would have no doubt of the correctness of the interpretation adopted in the·France Case were it not for Western Transit Co. v. Brown, 161 F. 869 (C.C.A.2). In the latter case, the Martha, which was in tow of the tug Mariposa, was struck by the Wilbur and damaged. The two steamers, Wilbur and Troy, were traveling in opposite direction to the Martha and kept together so closely that the Wilbur's stern was sucked into the Troy's wake, causing it to sheer to port and collide with the Martha. In a suit by the owners of the Martha, the only question as against the Troy was whether a collision could be said to have taken place, though the Troy and the Wilbur had never touched or come in contact with each other. This court decided that no collision occurred and the hull policy therefore did not apply. Whatever was further said limiting the coverage of the policy to a direct collision between the insured and damaged vessel was unnecessary to the decision. There is no inconsistency between the results in the Niobe and Western Transit Co. v. Brown Cases since, as we have said, the basis of the decision of the House of Lords is that the tow controlled the navigation of the tug and the two were considered as one vessel. Moreover, there is an obvious difference between both of those cases and one where vessel A collides with vessel B, and the latter in turn with vessel C as a result of the first contact. The hull policy insuring against the risks of collision plainly covers such a case.

The running-down clause unqualifiedly includes the risks of damage resulting from a collision of the insured vessel "with any other Ship or Vessel." Only one exception is made and that relates to injuries to harbors, wharves, etc. It is fair to assume that by the use of these exclusions, not contained in the clause found in Western Transit Co. v. Brown, the parties here intended the clause to extend beyond merely the damages to the vessel with which the insured vessel might come into immediate contact. To so restrict the clause would be to deprive it of nearly all its sense and meaning.

The damage to the Hanscom is therefore included and the suit on the Protection and Indemnity contract of insurance must fail.

Decree reversed.