DeBardeleben Coal Corporation owns and operates tugboats and other vessels in the various waterways of the United States. It brought this suit against the Protection and Indemnity Underwriting Syndicate and the insurance companies forming the said syndicate, claiming $1150.00 on allegations which may be summarized as follows:
That the said syndicate, in January 1941, and in each succeeding year, issued to the plaintiff company a policy of P. I. (Protection and Indemnity) insurance under which it agreed to indemnify the said corporation against loss resulting from liability growing out of damage caused by its tugs to bridges, piers, breakwaters, beacons and various other structures, except other vessels; that in said policy there was what is known as a deductible clause under which the first $350.00 of any such loss resulting from liability should be borne by the corporation itself, the insuring syndicate to pay only the balance of the loss; that in addition to the said policy known as the P. I. policy, the plaintiff corporation secured through the same insurance agency, George S. Kausler, Ltd., another policy of insurance known as a hull policy, issued by the United States Fire Insurance Company of New York, under which that insurance company agreed to indemnify plaintiff against damage sustained by its vessels and against loss resulting from liability growing out of collision by its vessels with any *Page 63 
vessel, craft, or structure, floating or otherwise; that in the said policy of hull insurance there was also a deductible clause which provided that the first $1500.00 of loss should be borne by the said plaintiff corporation and that the balance would be paid by the insurers; that for several years all cases of liability resulting from damage caused by its vessels to bridges, wharves, docks, etc., were reported to the Kausler Agency as adjusters of the various insurance companies and were adjusted under the hull policy which required plaintiff corporation to bear the first $1500.00 of each loss; that each of the said losses should have been adjusted under and on the basis of the P. I. policy and that thus in each case the plaintiff corporation should have been required to stand only the deductible loss of $350.00 instead of the deductible loss of $1500.00; that on October 22, 1945, one of the plaintiff's tugs, the C.F. DeBardeleben, came into collision with what is known as the West Port Arthur Bridge under circumstances which made plaintiff corporation liable for the damage, and that plaintiff corporation, believing that the loss should be adjusted under the P. I. policy, paid the said loss and then demanded settlement of the defendant syndicate with a deduction of only $350.00; that the said syndicate refused to settle the loss with plaintiff on the basis of $350.00, contending that the loss was payable under the hull policy issued by the United States Fire Insurance Company of New York and under which there would have been deducted from the settlement $1500.00, and that the said adjusters therefore delivered to plaintiff a check for $174.30 (which seems to represent the difference between the total loss and the $1500.00 deductible provided for in the hull policy); that the loss is one covered by the P. I. policy, under which the amount which should have been deducted was only $350.00 and that, therefore, plaintiff is entitled to recover from the defendant syndicate, and the various insurance companies composing it, the difference between the $350.00, which plaintiff admits should be deducted, and $1500.00, which was deducted by the company which issued and made settlement under the hull insurance policy.
The suit is brought for that difference, to-wit $1150.00.
To this petition defendants filed an exception of no cause of action. This exception was sustained and the suit ordered dismissed. Plaintiff has appealed.
Exceptors, conceding that the policy sued on was issued and that the loss occurred as alleged and that, except for a certain stipulation in the policy sued on, they would be liable for all except the first $350.00 of the loss, in denying that they are liable, point to that stipulation, which reads as follows:
"Notwithstanding anything to the contrary contained in this policy, no liability attaches to the Assurers:
"For any loss, damage, or expense which would be payable under the terms of the American Tug Syndicate present standard form of policy on hull and machinery, etc., whether or not the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense."
Exceptors maintain that, under the terms of what is known as the American Tug Syndicate standard form of policy on hull and machinery, any loss caused as this loss is alleged to have been caused would be payable, and since such a policy was available, the policy sued on was not effective as to that loss, and that this is true whether the vessel in question was covered by such a policy of the American Tug Syndicate or not.
When the exception was argued below, counsel entered into a stipulation to which was attached a standard form of hull policy of the American Tug Syndicate, which we understand is the hull policy referred to above.
Counsel for plaintiff direct our attention to the word "payable" in the above quoted stipulation in the P. I. policy, and they assert that since the amount claimed in this suit was not "payable" under the other or hull policy, it is not excluded from the coverage of this policy. They maintain that at least the stipulation is ambiguous, and that, therefore, it should, under the familiar rule be interpreted against the insurers who prepared and issued the policy.
It is asserted that the clause is ambiguuous in that it seems to attempt to exclude *Page 64 
from the coverage of the P. I. policy not certain particular "risks" which may be insured against in the standard form of hull policy, but rather attempts to exclude the "loss, damage, or expense" which may result from such "risks." The argument is that had the word "risks" been used instead of the words "loss, damage, or expense", then it would have been clear that the framers of the policy intended to base the exclusion from the one policy on the character of the occurrence causing the loss rather than on the amount or extent of the loss, and that since the word "risks", or some similar word was not used, it is evident that the clause bases the exclusion not on the character of the occurrence which caused the loss, but on the amount of the loss and on whether the entire amount thereof is payable under the other policy. Counsel say that it would have been very easy to have found language which could clearly have set forth such an intention, and and the point which they seek to make, they say, is illustrated in the case of The Schodack (United States v. American Insurance Company of Newark), 2 Cir., 89 F.2d 8. In that case there was a somewhat similar clause in one policy by which certain "risks" were excluded because those particular "risks" were "covered" by the terms of another policy. There the clause read as follows: "No vessel enrolled in the Agency shall be entitled to indemnity from the Agency * * * for any liability or expense resulting from any risk, event or occurrence covered by the terms of the ordinary form of marine insurance policy on hull, machinery, etc."
We are unable to agree entirely with the contention of plaintiff or that of the defendants. Plaintiff, as we have shown, asserts that, by the use of the word "payable", the parties indicated an intention that there would be excluded from the coverage of the P. I. policy only such loss, damage, or expense as might actually be due under the hull policy, whereas defendants maintain with equal certainty that there is entirely excluded from the P. I. policy any loss, damage, or expense resulting from any of the causes which are included within the protection of the hull policy; that if the loss is covered by the form of the hull policy, there can be no recovery under the P. I. policy, whether the whole of the amount of the loss is payable under the bull policy or not.
We find ourselves unable to see in the stipulation the ambiguity on which plaintiff relies. Surely the clause is not so clearly ambiguous as counsel now contend, for we are told by the petition that since 1941 all adjustments involving similar losses were made on the theory that they were payable under the hull policy and from each there was deducted $1500, and this until recently, without protest or objection from the plaintiff corporation. In fact, in oral argument, we are told by counsel for all parties that in that period — 1941 — 1945 — the plaintiff accepted, in seventy-three cases, settlements under the hull policy and thus acquiesced in a deduction of $1500 in each case. Surely if the exclusion clause were so clearly ambiguous, the contention now made would have sooner presented itself to the minds of the officials of the plaintiff corporation.
As we understand the matter, the hull insurance is issued to cover certain specified losses, particularly damage to the vessel itself, and we note that a hull policy, in addition to indemnifying the owners against loss sustained by their vessels also contains a clause under which indemnity is provided to the assured against certain other losses resulting from liability to others.
[1] The P. I. policy is issued in recognition of the fact that there might be some other "loss, damage, or expense" for which the insured might become liable and it, therefore, was intended to include all other such items of possible loss. But the issuers of that policy (the P. I.) recognized the fact that in the standard form of hull policy, which was available to the insured, many items of "loss, damage, or expense" were or might be insured against and, therefore, provided that whatever might be contained in that policy, (the P. I.), there would be no liability for such items as would be contemplated under a hull policy and which might, therefore, be covered by such a hull policy should the owner choose to purchase such a policy, and it provided that such exclusion should *Page 65 
not depend upon the actual issuance of such a hull policy; all that was required being that such a policy be available. We see nothing wrong with such a stipulation. We do not see anything ambiguous about it.
The argument of counsel for plaintiff that the mere availability of such a hull policy is not enough to prevent the application of the P. I. policy to such risks as might be or might have been covered by a hull policy, does not impress us in view of the actual wording of the stipulation, for that stipulation provides that such loss, damage, or expense would be excluded from the coverage of the P. I. policy, not only if such a hull policy had actually been obtained by the insured, but also "whether or not the vessel was fully covered by such insurance sufficient in amount to pay such loss, damage, or expense."
[2] Counsel for plaintiff say that, at least to the extent of $1500, the loss would not be payable under the hull policy, since that was the amount deductible in any event in the hull policy, and that, therefore, since $1500 was not payable under the hull policy, it should be payable under the P. I. policy except for $350, which was also deductible under the latter policy.
We think that it was the intention expressed in the language of the stipulation that if the loss sustained was one which could have been covered by a hull policy, it was not also covered by the P. I. policy regardless of the amount of the loss. Any other interpretation would place it within the power of the insured — by agreeing to a larger or to a smaller deductible in the hull policy, — to increase or decrease at the will of the insured the protection afforded by the P. I. policy. What we mean is this: If we assume that the $1150 herein sued for is an amount which, because of the deductible clause, is a "loss, damage, or expense" not payable under the hull policy and, therefore, payable under the P. I. policy, we see at once that had the insured agreed to a higher deductible in the hull policy, say $5,000, it would automatically have increased the possible liability under the P. I. policy.
Counsel for plaintiff argue that if the liability on which this suit is attempted to e based is not one covered by the P. I. policy, then the syndicate and the insurance companies obtained a part of the premium which was charged without giving any consideration therefor, since the premium charged must have been based upon a consideration of each item of possible loss. We do not see that we are concerned in any way with the amount of premiums charged, nor with the process of calculation by which that amount was arrived at. As we construe the policy, it does not cover bridge damage, except possibly to the extent we shall later discuss, since that damage was included in the coverage of the other policy. Therefore, whether or not any premium was charged for the coverage which was not afforded does not concern us.
While we thoroughly agree with counsel for defendants that the stipulation relied on prevents the attachment of the P. 
I. policy to any loss which might have been insured against under the hull or American Tug standard form policy, we are much concerned over the fact that we cannot detect from the record at this time, nor from the form of policy submitted, whether such a policy as would have covered the first $1500 of the loss was actually available to the insured; in other words, whether the American Tug standard form of policy provided for a deductible in this amount or whether, had the plaintiff (the insured) insisted upon it, it could have obtained a hull policy with a deductible of only $350 by paying a higher premium. We do not concern ourselves with the question of whether the insured actually secured such a policy, because, as we have said, all that the defendants need show to avoid liability under the P. I. policy is that, under such a hull policy as was available and could have been secured by the insured, all of the loss, damage, or expense which is herein sued for could have been included within that hull policy. But we have nothing by which we can determine that plaintiff could have secured hull insurance which would have covered the difference between the $1500 deductible on the one hand and the $350 deductible on the other.
What we have in mind is this. Suppose it should appear that no insurer regardless *Page 66 
of the premium charged, would issue a hull policy containing a deductible of less than $1500, could it then be said that that much of the loss would be payable under the standard form of policy of the American Tug Syndicate? The form of the hull policy which is before us contains a blank in which is to be inserted the amount of the deductible. If that amount could be fixed in advance at $350, even though the premium charged might have been controlled to some extent by the amount of the deductible agreed upon, then we feel that, regardless of the amount that it might have had to pay as a premium, the coverage could have been obtained by the insured under the standard hull policy and, consequently, that that loss would have been automatically excluded from the coverage of the P. I. policy. On the other hand, if it should appear that under no circumstances would any insurer have issued a hull policy with a deductible of less than $1500, then we feel that that particular loss which is now sued for could not have been made payable under a hull policy and, therefore, might be covered under the P. I. policy. The thought which we have in mind is inadvertently recognized by the language of counsel for defendants themselves who, in their original brief, have this to say: "* * * the amount of deductible in the hull policy does not in any way affect the liability of the P. and I. underwriters because the exclusion is defined by reference to a specific form of hull policy and not by reference to the terms of the particular hull policy which the assured might happen to have. By referring to a form of hull policy the exclusion is constant and fixed and the result is the same whether the assured does or does not carry any hull insurance at all."
We would quite agree if, as a matter of fact, the standard form on which defendants rely contained printed matter a standard deductible. Counsel say that the hull policy and the exclusion is constant. That is not true insofar as the amount of the deductible is concerned for that is not fixed in the form which is before us. Therefore, there is nothing before us to show that the particular loss now sued for could have been covered by the standard form of policy, and for this reason we feel that the exception should not have been maintained. Consequently, the matter must be remanded to the Civil District Court for the Parish of Orleans in order that evidence touching upon this question, whether the loss herein sued for could have been covered (whether it was or not is unimportant) by a standard form of policy on hull or machinery of the American Tug Syndicate, may be offered by the parties.
The judgment appealed from is annulled, avoided and reversed, and the matter is remanded to the Civil District Court for further proceedings according to law and not inconsistent with the views herein expressed; costs of this appeal to be borne by appellees, all other costs to await final determination.
Reversed and remanded.