TRINIDAD CORPORATION, Libelant-Appellee,

v.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION & INDEMNITY ASSOCIATION, Inc., Respondent-Appellant.

No. 154, Docket 23749.

United States Court of Appeals Second Circuit.

Argued Dec. 14, 1955.

Decided Jan. 20, 1956.

Kirlin, Campbell & Keating, New York City (Ira A. Campbell and Elmer C. Maddy, New York City, of counsel), for respondent-appellant.

Bigham, Englar, Jones & Houston, New York City (Leonard J. Matteson and Julian S. Gravely, Jr., New York City, of counsel), for libelant-appellee.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Libelant is insured under a protection and indemnity (P & I) policy on which it claimed indemnification for damages caused by the negligent operation of its vessel, the S.S. Mercer. Upon respondent insurer's denial of the claim, libelant brought suit in admiralty, and from the decree there entered, respondent prosecutes this appeal.

The facts, having been stipulated, are not in dispute, and may be stated briefly. The S.S. Mercer negligently collided with a section of pipe and its pontoon support. The pipe and pontoon were part of a series which was attached at one end, some 500 feet distant, to a dredge. The dredge pumped spoil from the channel bed through the pipeline, part of which (1200–1300 feet) was floated on the surface of the water by means of pontoons and part of which lay horizontally on the bed of the channel, to a disposal area on the far side of the channel. The impact damaged the pipeline and pontoons and caused one of the pontoons to collide with and damage a shrimp boat, the Icie, moored alongside of the pontoon line.

As in the District Court, the sole issue on appeal is whether the damage for which libelant seeks indemnification is within the coverage of the P & I policy. This turns on whether the pipe and pontoon were a "vessel or craft" within the meaning of clauses four and five of the policy. These, in pertinent part, read as follows:

"(4) Liability for loss of or damage to any other vessel or craft, or to property on board such other vessel or craft, caused otherwise than by collision of the insured vessel with another vessel or craft.

\*   \*   \*   \*   \*   \*

"(5) Liability for damage to \* \* \* any fixed or movable object or property whatsoever, except another vessel or craft \* \* \* unless elsewhere covered herein. \* \* \*"

Accordingly, if the sums paid by libelant to the owners of the pipeline and of the Icie were damages arising out of a collision with a "vessel or craft" as excluded from coverage by these clauses, libelant has no case and the decree should be reversed.

That policies of insurance are to be construed in favor of the insured is too well established to require citation. But even without this venerable canon of construction, our view is that these clauses, reasonably construed, cover the loss here. "Vessel," in the broadest sense, may be defined as including "every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. But respondent concedes that the sections of pipe and pontoons, apart from the dredge, are not by themselves a vessel, or craft, within the meaning of the policy, and we cannot see how they become capable of transporting anything when attached to the dredge in operation and hence immobile. The same conclusion emerges from a consideration of the phrase "property on board" which appears in clause (4). For the use of the broad term "property" leaves no doubt that everything on the vessel, whether or not part of the vessel, is excluded from coverage. Nothing could have been simpler than to broaden the exclusion to apply to property off the vessel, but attached thereto, if that had been desired. On the other hand, there can be no doubt that the pipe and pontoon lines are fairly described as movable objects or property —the language of the insurance coverage.

Moreover, P & I coverage is intended as the complement to collision insurance. This purpose would be frustrated, however, if, as has been suggested, ordinary collision clauses do not protect the shipowner against liability arising from a collision of his ship with a pontoon. 2 Arnould, Marine Insurance § 795 (13th ed., Lord Chorley, 1950).

We thus reach the same result as did the lower court by following the reasoning of the English courts in Bennett S. S. Co., Ltd. v. Hull Mutual S.S. Protecting Soc. Ltd., [1913] 3 K.B. 372, affirmed [1914] 3 K.B. 57. And, in so far as the English court rested its result on the fair import of the language of the clause—which in part is also the language in the clause here being construed—we too approve its reasoning. But the Bennett court also reconciled its decision with an earlier one, In re Margetts and The Ocean Accident and Guarantee Corp., [1901] 2 K.B. 792, holding a collision with an anchor attached by twenty to thirty fathoms of chain to a schooner was a collision with a vessel. The distinction there drawn was that an anchor is an essential part of a ship, without which she could not prudently put to sea, whereas fishing nets, which were involved in the Bennett case, are in no sense conducive to the seaworthiness of a vessel.

In the District Court, respondent appears to have relied almost entirely on the authority of In re Margetts. While the court below properly held In re Margetts inapplicable here, it did so by distinguishing it from the Bennett case in such a way as to perhaps indicate approval of In re Margetts. But we find no occasion now to express any opinion with reference to In re Margetts. We file this caveat, however, as In re Margetts followed and extended the principle of The Niobe, [1891] A.C. 401, in which it was held that a ship in tow of a tug must be regarded as one and the same vessel so that the ship was liable for damages to another vessel with which the tow collided. This circuit, however, has voiced a clear preference for the view of Lord Bramwell, who dissented in Niobe because he thought that the language of the collision clause, a typical one, was not, but should have been, given its natural and primary meaning. Western Transit Co. v. Brown, 2 Cir., 161 F. 869, certiorari denied 210 U.S. 434, 28 S.Ct. 763, 52 L.Ed. 1136; Coastwise S. S. Co. v. Aetna Ins. Co., D.C.S.D.N.Y.,

161 F. 871; see also 2 Arnould, Marine Insurance § 795 n. 93 (13th ed., Lord Chorley, 1950).

We do not think the conclusion thus arrived at is affected by Moore v. Purse Seine Net, Cal., 105 P.2d 919, reversed on rehearing, 1940, 18 Cal.2d 835, 118 P.2d 1, affirmed sub nom. C. J. Hendry v. Moore, 318 U.S. 133, 63 S.Ct. 499, 87 L.Ed. 663, or by any of the other cases cited by respondent.

Affirmed.