DIESEL TANKER A. C. DODGE INC.
and Alma R. Bushey and Raymond J.
Bushey, Jr., Executors of the Estate of
Raymond J. Bushey, Deceased, Libel-
lants,

v.

A. B. STEWART, Guy Janson, K. G. Po-
land and G. B. Brookes, etc.,
Respondents.

No. 62 Ad. 613.

United States District Court
S. D. New York.

March 23, 1966.

Foley & Martin, New York City, for plaintiffs; Christopher E. Heckman, New York City, of counsel.

Mendes & Mount, New York City, for defendants; Wilbur H. Hecht, New York City, of counsel.

CANNELLA, District Judge.

The libel seeking recovery under the insurance policies involved in this case, is dismissed.

Since the action is founded on marine insurance, the court finds that it is within the admiralty jurisdiction of this court. 28 U.S.C. § 1333.

This case was tried before this court, without a jury in January, 1966. Suit was brought against the respondents as underwriters and as representatives of other subscribers to policies of insurance issued by Lloyds, London insuring the libellants [1] against loss by reason of liabilities arising from certain cases enumerated in the policies.

On May 25, 1952 the Diesel Tanker A. C. Dodge collided with the S.S. Michael (and thereafter fire occurred) with resultant loss of life to persons aboard both vessels, personal injuries aboard both craft, loss of cargo on the Dodge, damage to the Michael and total loss to the Dodge.

Following the collision libellant Dodge filed a petition for limitation of liability and after trial and appeal it was held that the collision resulted from the joint fault of the Dodge and the Michael. It was also held that libellant Dodge was entitled to a limitation of liability. Petition of Diesel Tanker A. C. Dodge, Inc., 133 F.Supp. 510 (E.D.N.Y.1955), aff'd, 234 F.2d 374 (2d Cir. 1956). The Dodge was required to deposit in its limitation of liability fund $60.00 per ton of the vessel's gross tonnage for the benefit of personal injury and death claims, pursuant to 46 U.S.C. § 183. Out of this fund the libellant paid $64,531.50 to Frances Elliott, Administratrix of the Estate of John Elliott, Master of the Dodge, who died in the collision.

Before the above-mentioned litigation terminated, the owner of the Michael had settled the majority of the personal injury and death claims and the claim of the owner of the cargo on the Dodge. The Michael owner also paid to Frances Elliott the sum of $59,000.00 for a covenant not to sue the Michael.

The Dodge owner was insured under the policies of Hull and Disbursements Insurance in the amount of $400,000.00 which policies contained an American Hull Syndicate standard form of Running Down clause. Those insurers paid libellant the full face amount of the policy on the loss of the Dodge. The Dodge was also insured against fire in the amount of $150,000.00, in excess of the Hull Insurance coverage. The underwriters of that policy paid libellant $75,000.00 on account of the total loss of the Dodge.

1. Alma R. Bushey and Raymond J. Bushey, Jr., as Executors of the Estate of Raymond J. Bushey, deceased, disclaimed any interest in any amount recovered by libellant Dodge from any of the respondents and consented to the payment thereof to said libellant.

There were four additional policies of insurance [2] in full force and effect at the time of the collision.[3] The respondents freely admit the existence of such policies.

All the policies are in writing. The breach claimed by the libellant is the failure of the respondents to pay the amount of the loss which libellant claims was sustained. The respondents assert that the loss which the libellants claim to have sustained is not payable under the terms and conditions of any of the policies which are involved in this case.

The clauses of the policies upon which the libellant relies are alleged in the libel and the respondents do not contest the correctness of such clauses.

■■ It is well settled that in a "both to blame" collision, if one of the colliding vessels pays third-party claims, such claims become part of the collision damage of the vessel paying the claim. See The Albert Dumois, 177 U.S. 240, 20 S.Ct. 595, 44 L.Ed. 751 (1900); New York & Cuba Mail S/S Co. v. American S. S. Owners Mutual Protection and Indemnity Assn., Inc., 72 F.2d 694 (2d Cir.), cert. denied 293 U.S. 622, 55 S.Ct. 218, 79 L.Ed. 709 (1934). Under the maritime law of collision, the Michael was able to offset one-half of her payments on account of these claims against one-half of the damages allowed to the Dodge for loss of the Dodge and incidental expenses.

■ It is the libellant's contention that were it not for such third death, personal injury and cargo damage claims, the libellant would have recovered from the Michael $170,515.94. This figure is arrived at by using a general rule in a "both to blame" collision, viz, the vessel that is damaged least pays the other vessel an amount equal to one-half the difference of the sum of the losses sustained. See The North Star, 106 U.S. 17, 20 (1882); Petition of the Diesel Tanker A. C. Dodge, Inc., supra. The sum of $170,515.94 is one-half the difference between the hull claim of the Michael, $462,618.69, and the total loss value of the Dodge, $800,000.00, plus stand-by wreck and salvage expenses, a total of $803,650.57.

It is libellant's contention that the alleged loss that he suffered is covered under the insurance policies involved herein. Insofar as the Protection and Indemnity (P & I) policies are concerned, the libellant asserts that the loss falls within clauses 4 and 4(a) of the Stewart policy, which is incorporated by reference into the Janson excess policy.

■■ The P & I policies, as stated in the general provisions of such policies, undertake to insure the assured only for what he has become liable to pay and has actually paid, i.e., strict indemnity. However, clause 4(a) provides that if a claim arises under clause 4, it should be settled on the principle of cross-liabilities. The cross-liabilities principle

---

**2.** a) Policy No. 614 B 440943, issued by respondent, A. B. Stewart and others, referred to as a Protection and Indemnity Policy (otherwise known as P & I) insuring in the amount of $25,000.00 subject to a deductibility average of $500.00.

b) Policy No. 614 B 440944, issued by respondent Guy Janson, and others, referred to as excess Protection and Indemnity, in the amount of $175,-000.00, excess of the first $25,000.-00 of ultimate net loss.

c) Policy No. 614 B 446491, issued by respondent, K. G. Poland, and others referred to as a legal and/or contractual liability policy, insuring libellant in the amount of $750,000.00.

d) Policy No. 446492, issued by respondent, G. B. Brookes, and others, referred to as an excess legal and/or contractual liability policy, insuring libellant in the amount of $250,000.-00, but only to pay the excess of $750,000.00 for losses covered by policy "c)" hereinabove.

**3.** By stipulation at the trial the libel was dismissed as against respondent underwriters subscribing the Stewart Primary P & I Policy 614 No. 440943 and against underwriters subscribing the Brookes Excess Legal and/or Contractual Liability Policy No. 446492 without costs; since the Stewart policy was paid in full and since the amount of the alleged loss did not exceed the Poland policy.

states, in effect, that adjustment for losses in a "both to blame" collision should be made as if the owners of each vessel had been compelled to pay the owner of the other vessel some portion of the latter's damages that may properly be allowed in ascertaining the sum payable to the assured because of the collision. In other words, if cross-liabilities is applied, an insured owner will be deemed to have paid a portion of the damages even though, in fact, he has not actually expended any of his own money.

It is the libellant's position that even though he has been fully reimbursed for out-of-pocket costs or expenses, since he is demanding recovery for a loss under clause 4, strict liability does not apply; but rather, by applying cross-liabilities he could recover for the alleged loss.

It is well settled that if there is any ambiguity in a policy it should be resolved in favor of the assured. Trinidad Corp. v. American S/S Owners Mutual Protection & Indemnity Ass'n, 229 F.2d 57 (2d Cir. 1956). However, this court finds no ambiguity at all in clauses 4 and 4(a). Although 4(a) provides for the use of cross-liabilities, it is clear that it can be used to the same extent only as provided in the American Marine Insurance Syndicate Running Down Clause. This is explicitly set forth in clause 4(a).

Therefore, the use of the cross-liabilities principle would be governed by whatever limitations and conditions are established in the running down clause. The running down clause provides for the settling of claims, in a "both to blame" collision, on the principle of cross-liabilities *unless* the liability of the owners or charterers of one or both of the vessels is limited by law. Since the liability of the owner of the Dodge has been limited, it follows that the cross-liabilities *theory* principle mentioned in

clause 4(a) of the P & I policy could not be used even if the libellant had incurred a liability for loss under clause 4.[4] Therefore, the libellant could only recover under the P & I policies on the principle of strict indemnity and since libellant has already been reimbursed for what it has actually paid out, it is entitled to no further recovery under the P & I policies.

In New York & Cuba Mail S/S Co. v. American S. S. Owners Mutual Protection and Indemnity Assn., Inc. supra, the court was faced with facts substantially similar to those present in this case. A shipowner made a claim against his P & I insurer for a third party loss offset by the other shipowners in a "both to blame" collision. The P & I policy contained a clause worded similar to clause 4 of the Stewart policy. The court denied recovery under the P & I policy. The New York & Cuba Mail S/S Co. case is distinguishable from the instant case. The policy in that case made no provision for the application of cross-liabilities and therefore, of course, contained no limitation on the extent to which cross-liabilities could be used to settle claims. Although the court recognizes the importance of the New York & Cuba Mail S/S Co. case, it is not dispositive of issue in this case, insofar as the P & I policies are concerned.

If no recovery can be made under the P & I policies, it is libellant's position that full recovery could be made under the Poland policy. This policy does not provide for strict indemnity and therefore no question would arise as to whether the policy required the application of the cross-liabilities principle. All that the Poland policy requires, as set forth in clause 3 of that policy, is that the assured incur a legal liability. Clause 3 provides that it is: "To cover the legal * * * liability of the Assured for all

---

4. Even apart from the contract involved in this case, it seems to be the general opinion of text writers that in a case where the liability of one or both owners has been limited by law, the cross-liabilities principle cannot be used as a basis of settlement in a "both to blame" collision, since it would not be practical. See Hurd, The Law and Practice of Marine Insurance 123(2d ed. 1952); Templeman on Marine Insurance 309 (1950).

loss or expense resulting from the legal * * * liability of the Assured and/or their employees and/or agents and/or vessels owned, chartered or operated by the Assured for loss, damage and/or expense to others and/or to the property of others of whatever kind whether afloat or ashore and for loss of life and personal injury, death or illness of any person or persons arising out of or resulting from the ownership, use or operation of vessels owned, * * * ".

Clause 8 of the same policy provides that recovery can be made under it only if such losses are not collectible under Hull and Machinery or P & I policies. Since the libellant's alleged losses could be collected neither under the Hull policy, from which the libellant has received the full face amount, nor under the P & I policies for the reasons mentioned above, the libellant can recover, if at all, only under the Poland policy which is referred to by the libellant as the "umbrella" policy.

While it may be true that the libellant suffered a loss as a result of the setoff against it by the Michael, this court finds that the libellant did not incur the requisite legal liability as a result thereof. As stated in the New York & Cuba Mail S. S. Co. case [5], supra, 72 F.2d at 697: "This diminution [loss] was not due, however, to any liability of the Mexico to its own cargo or to the Hamilton, but simply because the Hamilton might offset its own damage in the division and such damage included its liability to the Mexico's cargo." Similarly in this case, the diminution of the Dodge's claim was not due to any legal liability for personal injury, death and cargo damage. The libellant has already been reimbursed for any legal liabilities incurred as a result of the collision.

In any event, the Poland policy only covers the assured's liability for loss *to others* or the property of others. It does not cover any loss sustained by the

assured by reason of the loss of its own property. The claim for $170,515.94 was, in effect, asserted to recover at least a part of the value (over and above that already received from various policies) of the Dodge which was a total loss.

It is this court's finding that the libellant is not entitled to recover either under the Janson or Poland policies or a combination of both. Therefore, the libel is dismissed.

So ordered.

---

5. Although this case was distinguished, when dealing with the P & I policies, it is of particular relevance to the present discussion.